1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
       WESTERN DISTRICT OF WASHINGTON
9                   AT TACOMA

10   CHRISTOPHER L. MANES,

11                     Plaintiff,                    CASE NO.     C05-5653RJB

12          v.                                       REPORT AND
                                                     RECOMMENDATION
13   JO ANNE B. BARNHART, Commissioner of
     Social Security,                                Noted for May 26, 2006
14
                       Defendant.
15

16

17

18

19          Plaintiff, Christopher L. Manes, has brought this matter for judicial review of the denial of his

20   applications for disability insurance and supplemental security income ("SSI") benefits.  This matter has

21   been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local

22   Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261

23   (1976).  After reviewing the parties' briefs and the remaining record, the undersigned submits the following

24   report and recommendation for the Honorable Robert J. Bryan's review.

                            FACTUAL AND PROCEDURAL HISTORY
25
26          Plaintiff currently is fifty years old.[1] Tr. 122.  He has an eleventh grade education and has past work

27

28          ¹Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access
     to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

experience as a construction worker. Tr. 142, 582.

On July 8, 1997, plaintiff filed applications for disability insurance and SSI benefits, which were denied initially and on reconsideration. Tr. 122-24, 129, 133-35, 311-14, 318-19, 322. A hearing was held before administrative law judge ("ALJ") Verrell L. Dethloff, Jr., on October 29, 1998, at which plaintiff, represented by counsel, appeared and testified, as did a lay witness. Tr. 63-82. On January 8, 1999, ALJ Dethloff issued a decision, finding plaintiff to have been disabled from August 7, 1993, through November 8, 1995, but not thereafter. Tr. 39-52. The Appeals Council granted plaintiff's request for review on April 26, 2000, and remanded the matter for further administrative proceedings. Tr. 352-54.

A second hearing was held before ALJ Marguerite Schellentrager on February 7, 2001, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 83-121. On June 2, 2001, ALJ Schellentrager issued a decision, agreeing that plaintiff had been disabled from August 7, 1993, through November 8, 1995, but that thereafter he was able to make an adjustment to other work existing in significant numbers in the national economy. Tr. 17-26. On June 20, 2002, the Appeals Council denied plaintiff's request for review. Tr. 7. Plaintiff appealed the denial to this Court, which on September 2, 2003, remanded the matter for further administrative proceedings. Tr. 592-95, 597-603.

A third hearing, therefore, was held on January 14, 2004, before ALJ John Bauer, at which plaintiff, represented by counsel, appeared and testified, as did a medical expert and a vocational expert. Tr. 659-98. On April 7, 2004, ALJ Bauer issued a decision, finding specifically in relevant part:

 (1) at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability;

 (2) at step two, plaintiff had "severe" impairments consisting of "status post multiple orthopedic operations for repair of a left forearm fracture, right tibia and fibular fractures, and left ankle fracture with a history of pelvic injury with ischia and pubic ramus fractures, degenerative disc disease of the lumbar spine and left ankle arthritis";

 (3) at step three, plaintiff's impairments met the criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.06, from September 30, 1993, through November 8, 1995, but not thereafter;

 (4) at step four, since November 9, 1995, plaintiff had the residual functional capacity to perform a significant range of sedentary work, consisting of the ability to sit six hours in an eight hour day, stand two hours in an eight hour day, stay in one position for 35 minutes, and take less than one minute to change positions; and

1

2

(5)      at step five, as of November 9, 1995, plaintiff was capable of performing other
jobs existing in significant numbers in the national economy.

3

Tr. 590-91.  On September 7, 2005, the Appeals Council denied plaintiff's request for review, making ALJ

4

Bauer's decision the Commissioner's final decision. Tr. 564; 20 C.F.R. § 404.1481, § 416.981.

5

On October 7, 2005, plaintiff filed a complaint in this Court seeking review of the ALJ's decision.

6

(Dkt. #1-#3).  Specifically, plaintiff argues that decision should be reversed and remanded for an award of

7

benefits for the following reasons:

8

(a)      the ALJ erred in assessing plaintiff's residual functional capacity;

9

(b)      the ALJ erred in assessing plaintiff's credibility; and

10

(c)      the ALJ erred in finding plaintiff capable of performing other work existing in
significant numbers in the national economy.

11

12

The undersigned finds, however, that the ALJ did not err in determining plaintiff to be not disabled, and

therefore recommends that the Court affirm the ALJ's decision.

13

## DISCUSSION

14

15

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the

16

Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to

support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is

17

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson

18

v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than

19

a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir.

20

1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than

21

one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d

22

577, 579 (9th Cir. 1984).

23

I.      The ALJ Did Not Err in Assessing Plaintiff's Residual Functional Capacity

24

If a disability determination "cannot be made on the basis of medical factors alone at step three of

25

the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and

26

assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A

27

claimant's residual functional capacity assessment is used at step four to determine whether he or she can do

28

his or her past relevant work, and at step five to determine whether he or she can do other work. Id.

REPORT AND RECOMMENDATION
Page - 3

1  Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.

2      A claimant's residual functional capacity is the maximum amount of work the claimant is able to

3  perform based on all of the relevant evidence in the record. Id.  However, a claimant's inability to work

4  must result from his or her "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those

5  limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a

6  claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-

7  related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the

8  medical or other evidence." Id. at *7.

9      The ALJ found plaintiff had the residual functional capacity to perform "a significant range of

10  sedentary work." Tr. 591.  Specifically, the ALJ found that plaintiff "could sit six hours in an eight hour day

11  and stand two hours in an eight hour day," and that he "could stay in one position for 35 minutes and would

12  take less than one minute to change positions." Id.  Plaintiff argues that the medical evidence in the record

13  supports a more restrictive residual functional capacity, and that the ALJ failed to provide proper reasons

14  for rejecting that evidence.  The undersigned disagrees.

15      Plaintiff asserts the ALJ erred in evaluating the opinions of Drs. Jens R. Chapman and Richard L.

16  McLeod II, each of whom opined that he was far more restricted in his ability to work than was found by

17  the ALJ.  For example, in late September 1995, and again in late December of that year, Dr. Chapman

18  completed a state agency physical evaluation form, on which he checked a box indicating plaintiff was

19  "[s]everely limited" (defined as "[u]nable to lift at least 2 pounds or unable to stand and/or walk") in his

20  "overall residual ability to perform at least half-time in a normal day to day work setting." Tr. 274, 277.  In

21  mid-May 1996, Dr. McLeod filled out the same state agency physical evaluation form, wherein he checked

22  the "[s]everely limited" box as well. Tr. 272.

23      In addition, plaintiff argues the ALJ erred in rejecting the opinions of a physician assistant and nurse

24  practitioner, both of whom found him to have a more restrictive residual functional capacity than did the

25  ALJ.  For example, Michael Turpin, PAC, also checked the "[s]everely limited" box on another state agency

26  physical evaluation form he completed in mid-March 1997. Tr. 270.  In late July 1999, Mardell C.

27  Richmond, ARNP, checked the box on that form indicating plaintiff was capable of performing sedentary

28  work at least half-time in a normal day to day work setting. Tr. 536.  However, she further stated he would

1    be "unable to sit, stand or work for more than" 10 minutes. Id.

2            With respect to the above opinions, the ALJ found as follows:

3            I have considered the opinions that the claimant was severely limited.  These opinions
             are based on the number of the claimant's injuries and the fact that he has undergone so
4            many surgeries, but do not seem to be based on actual physical examinations that
             supported the level of limitations alleged.  Additionally, some of these opinions were
5            made by sources that are not acceptable medical sources such as physician assistants and
             nurse practitioners.  I adopt by reference the additional reasons for not granting weight
6            to these opinions set forth in the prior hearing decision (Exhibit 5A).

7    Tr. 588.

8            In the prior hearing decision, ALJ Schellentrager stated that while she had "considered a series of

9    opinions for periods after November 9, 1995," those opinions were "not supported by the weight of the

10   evidence" and were "checkbox forms with very little data." Tr. 23.  ALJ Schellentrager further noted that

11   "the last evaluation by a treating source of record" was completed in late July 1998, in which plaintiff was

12   found "capable of sedentary work activity" with the same "position changes" found by ALJ Bauer. Tr. 23,

13   588-89.  Finally, she found that other medical evidence in the record supported a finding that plaintiff had at

14   least the residual functional capacity assessed by ALJ Bauer. Id.

15           The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the

16   medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the

17   record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the

18   ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must

19   be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir.

20   1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact

21   inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts

22   "falls within this responsibility." Id. at 603.

23           In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be

24   supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a

25   detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

26   thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence."

27   Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the

28   ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

REPORT AND RECOMMENDATION
Page - 5

1    The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of

2    either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a

3    treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and

4    legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the

5    ALJ "need not discuss all evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739

6    F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original).  The ALJ must only explain

7    why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07

8    (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

9    In general, more weight is given to a treating physician's opinion than to the opinions of those who

10   do not treat the claimant. Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of

11   a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or

12   "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190,

13   1195 (9th Cir.,2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242

14   F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the

15   opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A nonexamining physician's opinion may

16   constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-

17   31; Tonapetyan, 242 F.3d at 1149.

18   Plaintiff argues the ALJ improperly discounted the opinions of Dr. Chapman and Dr. McLeod in

19   finding that their opinions were based only on the number of injuries he had and the number of surgeries he

20   had undergone, and that they did not seem to be based on actual physical examinations that supported the

21   level of limitations he alleged.  However, there is little in the way of objective medical evidence contained in

22   Dr. Chapman's diagnostic and examination notes to support his two "[s]everely limited" opinions.  For

23   example, as the ALJ noted, Dr. Chapman only listed the injuries and surgical procedures plaintiff has had in

24   the "objective-supporting documentation" sections of both opinions. See Tr. 273, 275.

25   The same is true with respect the one opinion provided by Dr. McLeod.  He too only set forth little

26   in the way of objective medical evidence to support that opinion. Tr. 271.  The one physical examination

27   that Dr. McLeod actually performed also does not provide much in the way of supporting clinical findings,

28   other than the fact that plaintiff's right leg was "obviously shorter" than his left one. Tr. 267.  Such lack of

1  supporting objective medical evidence is a valid reason for rejecting even a treating physician's opinion. See

2  Batson, 359 F.3d at 1195 (ALJ need not accept opinion of treating physician if it is inadequately supported

3  by clinical findings).  Further, the Ninth Circuit has expressed preference for individualized medical opinions

4  over check-off reports. See Murray v. Heckler, 722 F.2d 499, 501 (9th Cir.1983).

5       In addition, with respect to the opinions of Dr. Chapman, both times he stated that plaintiff would be

6  "[s]everely limited" in his ability to work at least half-time in a day to day work setting for a period of only

7  twelve weeks. Tr. 274, 277; See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (claimant must show

8  he or she suffers from medically determinable impairment that can be expected to result in death or that has

9  lasted or can be expected to last for continuous period of not less than twelve months).  The three prior

10  opinions Dr. Chapman provided concerning plaintiff's ability to work, furthermore, found plaintiff to be

11  capable of at least sedentary work. See Tr. 279, 286, 292.  Indeed, only seven months prior to the first time

12  he found him to be severely limited, Dr. Chapman felt plaintiff was capable of performing at the light

13  exertional level. Tr. 279.

14       The weight of the remaining objective medical evidence in the record, as pointed out by both ALJ

15  Schellentrager and ALJ Bauer, supports ALJ Bauer's assessment of plaintiff's residual functional capacity

16  as well.  Physical examinations conducted in 1994 and 1995, indicate that plaintiff's medical condition was

17  improving and that he was capable of sedentary work. Tr. 289, 295, 495, 502, 509-10, 516.  Indeed, it was

18  reported in early November 1995, that:

19       Mr. Manes returns after having his proximal and distal interlocking screws from his tibial
         nail removed.  This was done on 10/12/95.  Since that time the patient has been doing
20       well and his symptoms of prominent screws has been relieved.  He continues to
         complain of mild aching pain of his right leg which has been chronic, but feels that this is
21       a minor nuisance compared to his previous state of being.  He is able to work manual
         labor in construction for 6-8 hours per day and feels that he can keep this up given the
22       state of his leg now.

23  Tr. 490 (emphasis added).  Accordingly, plaintiff was "released to continue" the work he had been doing up

24  to that point in time. Id.  Other objective medical evidence in the record also provides little in the way of

25  support for plaintiff's allegations of disabling impairments, and thus largely supports the ALJ's findings. See

26  Tr. 365-66, 554-55, 633, 639, 643.

27       A physical residual functional capacity assessment form completed by Dr. David L. Deutsch and Dr.

28  Robert Murphy in the latter half of 1997, indicated plaintiff was capable of performing a modified range of

sedentary work. Tr. 301-08.  The most recent state agency physical evaluation form in the record completed

1   by an examining physician in late July 1998, furthermore, sets forth physical limitations that are generally

2   consistent with those found by the ALJ. Tr. 387-88.  In addition, at the hearing before ALJ Bauer, the

3   medical expert testified that as of mid-October 1995, plaintiff was capable of performing up to the light

4   exertional level due to good healing and medical improvement. Tr. 665-72.

5          Plaintiff is correct in stating that an opinion regarding a claimant's symptoms may not be rejected

6   merely because it comes from a treating or examining source who is not an "acceptable medical source," as

7   that term is defined in the Social Security Regulations. See Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir.

8   1996) (acceptable medical sources include licensed physicians and certified psychologists); 20 C.F.R. §

9   404.1513(a), (d); 20 C.F.R. § 416.913(a), (d).  Because physician assistants and nurse practitioners are not

10  "acceptable medical sources," however, their opinions may be given less weight. Id.  Instead, in general

11  those opinions are treated in the same manner as lay witness testimony. See 20 C.F.R. § 404.1513(d), §

12  416.913(d) (evidence from other sources may be used to show severity of claimant's impairments and how

13  they affect his or her ability to work).

14         Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into

15  account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to

16  each witness for doing so." Lewis v. Apfel, 236 F.3d, 503, 511 (9th Cir. 2001).  An ALJ may discount lay

17  testimony if it conflicts with the medical evidence. Id.; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir.

18  1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence).  In rejecting

19  lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for

20  dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those

21  reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512.  The ALJ also may

22  "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

23         Here, the ALJ did provide "germane" reasons for rejecting the opinions of both Mr. Turpin and Ms.

24  Richmond.  Although the ALJ did not refer to their opinions specifically, he did note the record contained

25  opinions regarding plaintiff's residual functional capacity provided by non-acceptable medical sources.  He

26  also found the weight of the medical evidence in the record did not support a finding of severe limitations or

27  limitations more restrictive than those he adopted.  In addition, the ALJ relied on the findings provided by

28  ALJ Schellentrager, who noted the most recent opinion in the record from an acceptable medical source

1   indicated plaintiff had the residual functional capacity found by ALJ Bauer.  Lastly, it should be noted that

2   the state agency evaluation forms completed by Mr. Turpin and Ms. Richmond are seriously devoid of any

3   supporting clinical findings or other objective medical evidence, and thus appear to the type of check-off

4   reports frowned upon by the Ninth Circuit.  See Tr. 268-70, 299, 535-37.

5   II.      The ALJ Properly Assessed Plaintiff's Credibility

6        Questions of credibility are solely within the control of the ALJ.  Sample v. Schweiker, 694 F.2d

7   639, 642 (9th Cir. 1982).  The Court should not "second-guess" this credibility determination.  Allen, 749

8   F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is

9   based on contradictory or ambiguous evidence.  Id. at 579.  That some of the reasons for discrediting a

10  claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long

11  as that determination is supported by substantial evidence.  Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th

12  Cir. 2001).

13       To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the

14  disbelief."  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).  The ALJ "must identify

15  what testimony is not credible and what evidence undermines the claimant's complaints."  Id.; Dodrill v.

16  Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering,

17  the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  Lester, 81 F.2d at

18  834.  The evidence as a whole must support a finding of malingering.  O'Donnell v. Barnhart, 318 F.3d 811,

19  818 (8th Cir. 2003).

20       In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility

21  evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other

22  testimony that "appears less than candid."  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ

23  also may consider a claimant's work record and observations of physicians and other third parties regarding

24  the nature, onset, duration, and frequency of symptoms.  Id.

25       ALJ Bauer provided the following findings regarding plaintiff's credibility:

26       I do not find the claimant particularly credible.  I adopt the credibility findings in the
         prior decision and concur with the statements in that decision (exhibit 5A).  I also noted

27       that the claimant testified that he had only mowed a lawn twice, but in Exhibit 10E he
         said that he mowed twice a month.  He was able to take a bus to and from drug
         deliveries fifteen days a month.  This suggests that he had to sit on the bus and stand and

28       get off the bus when it stopped.  He testified that he had to have several minutes of

standing before he would even attempt to walk. This is not consistent with riding a bus. He was attending two hour classes as the second hearing, suggesting that his pain was not impacting his ability to maintain attention and concentration. He thought he might be able to make jewelry, suggesting that he did not think his ability to concentrate would be affected by his pain complaints. I do not accept that the claimant's pain interferes with his concentration and I do not accept that it takes the claimant several minutes to go from sitting to standing and walking. There is no medical documentation of loss of sensation in the claimant's feet or legs and he has no atrophy to support his complaints of weakness.

Tr. 588. In the prior decision, ALJ Schellentrager also found as follows:

The claimant is clearly not without restriction, and has a documented history of musculoskeletal dysfunction. However, assertions of total incapacity are simply not borne out by the objective evidence of record, well-weighted medical opinion, or by the consistency of the claimant's own reported and demonstrated functional ability. Despite claims of incapacity which would not allow the claimant to perform work activity, the claimant testified that he is attending GED preparatory classes, and is able to attend these two-hour sessions with a combination of sitting and standing. He admitted that he is able to lift from 7 to 10 pounds as needed. The claimant admitted that he only "sometimes" uses a cane, and indeed the record does not indicate that daily cane use is by medical prescription. He did not present with a cane at the time of hearing.

The claimant's treatment history since November 1995 has been generally infrequent and received on demand. Yet the evidence does not support a finding that [the] claimant has ever been refused medical treatment because of an inability to pay for such treatment. From November 1995 to the present, the record does not reflect extensive physical therapy or the use of strong doses of pain medication. In addition, significant clinical signs typically associated with chronic pain have not been consistently present on physical examination. There is no objective evidence of severe muscle atrophy, bowel or bladder dysfunction, severe and persistent muscle spasms, severe neurological deficits, or inflammatory signs (heat, redness, swelling, etc.).

The claimant's appearance at the hearing did nothing to add to the weight of the allegation of disability. I did not observe credible signs of significant motor deficits or serious discomfort during the hearing, and the claimant was able to sit for 35 minutes before rising. The claimant's testimony indicated limited daily activities, but it appears that the limitations are largely a matter of choice. Also, the claimant has previously described activities of daily living including moderate driving, household chores, and yard work which are inconsistent with an inability to perform all work activity (Exhibit 10E). In addition, although the claimant has alleged significant hand numbness and grip strength reduction, he denied these symptoms when queried by Dr. [Christopher C.] Kain. Dr. Kain further noted that the claimant was able to forward bend to 60 degrees, with a full range of painless hip and knee motion (Exhibit 24F).

I note that there is no substantial evidence to support allegations of severe nonexertional pain which would significantly diminish [the] claimant's ability to concentrate, and that the claimant is apparently able to watch television, read, or do similar activities which require some level of concentration. There was no lay witness testimony which provided significant independent evidence to support the claimant's allegations of total disability. Claimant's work record is sparse and does little to add to the credibility of the allegations of disability. Overall, the undersigned did not find claimant's testimony to be fully credible. The allegations of total disability are simply not supported by the weight of the evidence.

With regard to substance abuse, the claimant stated that he has not used alcohol on a

regular basis since August 1993, but admitted to the heavy use of methamphetamines in July 2000. In addition, although he initially denied any other drug use from November 1995 to the present, the record contains a urine drug screen of October 22, 1997 which confirms the use of marijuana (Exhibit 15F:3). While not material to the determination of disability, I find that the claimant's misrepresentation of his substance abuse does little to enhance his credibility in this matter. . . .

Finally, I note that the claimant told Dr. Thomas D. Chi, M.D. on November 9 1995 that he felt that he was able to work manual labor in construction for 6-8 hours per day (Exhibit 22F).

Tr. 21-22.

A determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998). In addition, failure to assert a good reason for not seeking, or following a prescribed course of, treatment, or a finding that a proffered reason is not believable, "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); see also Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe, and claimant's failure to request serious medical treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription of physician for conservative treatment only to be suggestive of lower level of pain and functional limitation).

To determine whether a claimant's symptom testimony is credible, the ALJ also may consider his or her daily activities. Smolen, 80 F.3d at 1284. Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7. The claimant need not be "utterly incapacitated" to be eligible for disability benefits, however, and "many home activities may not be easily transferable to a work environment." Id.; see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ properly found claimant's extremely poor work history and lack of propensity to work in her lifetime negatively affected her credibility regarding her inability to work).

Finally, an ALJ may rely on a claimant's demeanor at the hearing as a basis for discrediting his or her testimony. Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002); Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992). Inclusion of personal observations of the claimant in the ALJ's findings "does not render the decision improper." Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). However, the ALJ may not reject a claimant's subjective complaints "solely on the basis of" personal observations. SSR 95-5p, 1995

WL 670415 *2.  As noted above, both ALJ Bauer and ALJ Schellentrager discounted plaintiff's credibility based on all of the above accepted reasons for doing so.

Plaintiff only challenges a few of these reasons as constituting an invalid basis for discounting his credibility.  First, he asserts ALJ Bauer offered no description of his "efforts in riding a bus beyond that reference." Plaintiff's Opening Brief, p. 15.  The undersigned, however, does not find it unreasonable for the ALJ to have assumed that the ability to ride a bus consistently over a significant period of time, as plaintiff appeared to have done, also requires the ability to get on and off a bus, and that such ability is not compatible with a need to stand for several minutes before being able to walk.  In addition, although the record may not contain any evidence that plaintiff actually made any recent efforts to make jewelry, he did testify that he thought he might be able to do so. Tr. 101-02.  This testimony at least implies plaintiff did not see himself as disabled as he alleges he is.

Finally, with respect to the ALJ's findings concerning plaintiff's ability to attend two-hour classes, plaintiff asserts there is no indication he ever completed his education.  However, there is no indication in the record that plaintiff was unable to complete his education due to an inability to concentrate.  Indeed, as noted by the ALJ, plaintiff appeared to have sufficient concentration to stay in class for two hours at a time.  In any event, even if the above three reasons could be said to have been improper, the mere fact that some of the reasons for discounting plaintiff's credibility were improper, does not render the ALJ's credibility determination invalid, as long as that determination is supported by substantial evidence in the record, as it is in this case. Tonapetyan, 242 F.3d at 1148. Indeed, as noted above, ALJ Bauer and ALJ Schellentrager both presented many more reasons for discounting plaintiff's credibility, the majority of which plaintiff has not challenged here.

III.   The ALJ Did Not Err in Finding Plaintiff Capable of Performing Other Jobs Existing in Significant Numbers in the National Economy

If a claimant cannot perform his or her past relevant work, the ALJ then must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 416.920(d), (e).  An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony thus must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th

1   Cir. 1988).  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and

2   supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted).  The ALJ, however, may

3   omit from that description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853,

4   857 (9th Cir. 2001).

5          The ALJ posed a hypothetical question to the vocational expert that included essentially the same

6   limitations contained in the ALJ's assessment of plaintiff's residual functional capacity. Tr. 694.  Based on

7   that hypothetical question, the vocational expert testified that plaintiff would be able to perform the job of

8   parking lot attendant, which was at the light exertional level. Tr. 695.  The vocational expert testified that

9   there were 500 such jobs in the State of Washington. Id.  Upon further questioning from the ALJ, the

10  vocational expert testified that the job could be performed at the sedentary level of exertion with a sit/stand

11  option, but that this would reduce the number of such jobs in the state to 250. Tr. 695-97.

12         Plaintiff first argues that the job of parking lot attendant was inapplicable to his situation, because

13  the vocational expert testified that this was a light work job, while the ALJ's assessed him as being capable

14  of performing work only at the sedentary level.  As noted above, however, while the vocational expert at

15  first testified that the job of parking lot attendant was at the light exertional level, she then clearly went on

16  to testify that it could be performed at the sedentary exertional level, although the number of such jobs

17  would be reduced by half.  Plaintiff next argues though, that because the vocational expert testified that only

18  250 such jobs exist in the state, the Commissioner failed to meet her burden of proving he is capable of

19  performing other jobs existing in significant numbers in the national economy.

20         Work is considered to exist in the national economy "when there is a significant number of jobs (in

21  one or more occupations) having requirements" which the claimant is "able to meet" with the claimant's

22  "physical or mental abilities and vocational qualifications." 20 C.F.R. § 404.1566(b), § 416.966(b); Barker

23  v. Secretary of Health and Human Services, 882 F.2d 1474, 1478 (9th Cir. 1989) ("'[W]ork which exists in

24  the national economy' means work which exists in significant numbers either in the region where such

25  individual lives or in several regions of the country.").  Although plaintiff argues 250 jobs is not a significant

26  number, the Ninth Circuit Court of Appeals "has never clearly established the minimum number of jobs

27  necessary to constitute a 'significant number.'" Barker, 882 F.2d at 1478.

28         It is true the Ninth Circuit also has stated that "[i]n looking toward the pool of jobs existing in the

1    national economy, Congress did not intend to foreclose a claimant from disability benefits on the basis of the

2    existence of a few isolated jobs." <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 851 (9th Cir. 1990) (citation omitted).

3    The Court of Appeals also went on to state in <u>DeLorme</u> that "when vocational experts identify several job

4    categories and thousands of jobs performable in the state by the claimant," it has "repeatedly found

5    substantial evidence of performable jobs." <u>Id.</u>; <u>see also</u> <u>Coletta v. Massanari</u>, 163 F.Supp.2d 1101, 1106

6    (N.D.Cal. 2001).  Other courts, however "have agreed with the Commissioner that a 'significant' number

7    was fairly minimal." <u>Franklin v. Apfel</u>, 8 F.Supp.2d 227, 234 (W.D.N.Y. 1998).

8         For example, the Eighth Circuit Court of Appeals has found that as few as 200 jobs at the state level

9    to be sufficient for step five purposes. <u>See</u> <u>Johnson v. Chater</u>, 108 F.3d 178, 180 n.3 (8th Cir. 1997); <u>but see</u>

10   <u>Coletta</u>, 163 F.Supp.2d at 1106-07 (unable to locate single case accepting any number below 500 jobs in

11   geographical region, let alone all of California as significant).  In addition, while the Ninth Circuit in <u>Barker</u>

12   held that 1,266 jobs was a significant number, it did so while noting that "[d]ecisions by district courts

13   within this circuit" were "also consistent with" this number, including the decision in <u>Uravith v. Heckler</u>,

14   1986 WL 83443 (D.Ariz.) (finding that although 60-70% of 500-600 relevant positions required experience

15   claimant did not have, remaining positions constituted significant number). <u>Barker</u>, 882 F.2d at 1478-79.

16        Accordingly, given the fact that the Ninth Circuit has not clearly established the minimum number of

17   jobs necessary to constitute a "significant number," and that it has at least implied that as few as 150 to 200

18   jobs may constitute a significant number, the undersigned cannot say that in this case 250 parking lot

19   attendant jobs fall into the category of "a few isolated jobs."  The undersigned, therefore, also cannot say

20   the ALJ erred in finding plaintiff was capable of returning to other jobs existing in significant numbers in the

21   national economy.

22                                    <u>CONCLUSION</u>

23        Based on the foregoing discussion, the court should find the ALJ properly concluded plaintiff was

24   not disabled, and should affirm the ALJ's decision.

25        Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b),

26   the parties shall have ten (10) days from service of this Report and Recommendation to file written

27   objections thereto. <u>See also</u> Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those

28   objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit

REPORT AND RECOMMENDATION
Page - 14

1    imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **May 26, 2006**, as

2    noted in the caption.

3           DATED this 27th day of April, 2006.

4

5

6                                              Karen L. Strombom
                                               United States Magistrate Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPORT AND RECOMMENDATION
Page - 15